# EXHIBIT H

**Legal Services**
1829 Denver West Dr. Bldg. 27, Golden, CO 80401
Phone: 303.982.6544



June 15, 2026

Ms. Erica Austin, Acting Regional Director
U. S. Dept. of Education Office for Civil Rights
1560 Broadway, Suite 110
Denver CO 80202

Re: OCR Case Number 08-25-5902, Response to Impasse Letter

Dear Ms. Austin:

I write in response to OCR's Impasse Letter, dated June 3, 2026 (the "Letter"), which threatens unnecessary enforcement action against Jefferson County Public School ("Jeffco" or the "District") unless we agree to the proposed Resolution Agreement by end of day today. We are deeply disappointed by this development. Jeffco remains ready, willing, and able to engage in meaningful, ongoing conversations with OCR. In fact, we are scheduled to meet tomorrow, June 16, with your colleagues, Messrs. Nico Mittnacht, Supervisory Attorney/Team Leader, and Dan Kowalski, EEO Specialist. The primary topic for that meeting is the terms of the proposed Resolution Agreement that are facially inconsistent with Colorado law.

Let there be no doubt: Jeffco Public Schools remains steadfastly committed to every student's right to access equal educational opportunities. That commitment is non-negotiable. It is who we are. We serve nearly 75,000 students across 145 schools, and the well-being and dignity of each of those students drives every decision we make. We care deeply about all of our students, and the District unequivocally support every student's right to learn in an environment free from discrimination and harassment.

**The Declaration of Impasse Is Premature and Inconsistent with Good Faith Negotiation**

We are not at an impasse, in any sense of the word. OCR's Case Processing Manual and the timeline of communications support that a declaration of impasse is premature. As detailed in our June 2, letter, the District met with OCR on May 8 and May 21, 2026, to address significant factual errors in OCR's March 13 Letter of Findings and to discuss the complex legal landscape relevant to the proposed Resolution Agreement. All Parties left the meetings with agreed-upon follow-up tasks and further agreed to meet again on June 16, 2026.

Yet on June 3, less than 24 hours after receiving our June 2 letter – and still within the initial 90 days the CPM expressly provides for good faith negotiations – OCR abruptly declared an impasse and set a deadline for June 15, one day *prior to our next scheduled negotiation meeting*. Scheduling a meeting for the express purpose of engaging in continued negotiations, and then abruptly declaring impasse weeks before that follow-up meeting even takes place, runs directly counter to good-faith negotiation. Simply put, the CPM's framework for resolution contemplates meaningful dialogue, and there is still time for those negotiations. At no point has Jeffco refused to engage in thoughtful discourse, nor expressly refused any proposed term. On the contrary, we have repeatedly requested that OCR continue discussions to address factual inaccuracies from its

Letter of Findings and to tailor any proposed terms of resolution to facts, rather than baseless allegations, misunderstanding, or half-truths.

The purpose of a resolution agreement is to agree on "specific acts or steps … to resolve compliance concerns and/or violations." *See* CPM Sect. 304. Yet, because OCR apparently misunderstood the District's data, it first drew ill-informed conclusions and then compounded that plain error by crafting terms for a proposed Resolution Agreement based on a fundamental misapprehension of reality. For example, the Letter of Findings falsely claims that the District's rosters showed 61 boys competing on girls' sports teams, which OCR found displaced girls from competition spots and OCR asserts that violates Title IX. It is based on OCR's mistaken reading of the rosters that proposed Resolution Agreement Action Item 2 directs the District to take several highly burdensome steps to remedy a non-existent harm. This makes no sense.

OCR's unexpected pivot is also especially troubling given that OCR has yet to follow through on its own commitments from our May meetings. After both the May 8 and May 21 conversations, OCR agreed to provide follow-up information in writing. OCR has not done so, despite Jeffco explaining that this information is critical to fully assess the proposed Resolution Agreement. The District should not bear the consequences of OCR's failure to fulfill its own commitments.

In mediating resolutions, OCR itself requires that parties "participate in discussions in good faith." CPM Sect. 202(b). OCR must now hold itself to this standard, where, as here, negotiations remain ongoing, and OCR's unilateral and premature withdrawal from those negotiations is not in good faith, is inconsistent with the CPM, and flouts the basic tenets of Due Process and fundamental fairness.

**Facts Matter and OCR's Factual Findings Are Demonstrably Incorrect**

As we have explained in prior correspondence, including the June 2 letter, and in our May meetings, the central factual premise of OCR's investigative outcome is wrong. OCR erroneously concluded and publicly announced that our data showed that more than 60 boys are competing on Jeffco's girls' athletic teams. That is patently false. As we've repeatedly sought to clarify, the rosters simply showed that boys have some support roles for girls' athletics as trainers, team managers, and mascots. None of these boys competed on girls' teams or displaced girls from girls' teams. Far removed from serving as fodder for sensational headlines, soundbites, or a trendy social media hashtag, this practice is commonplace in schools nationwide and does not violate Title IX.

Had OCR asked a single follow-up question of the District during the eight months following receipt of our data submission—as the CPM contemplates—this misunderstanding could have been resolved immediately. Instead, OCR heedlessly placed children in potential harm's way by publicly disseminating demonstrably false information about Jeffco students via both social media and press releases. OCR's choice to politicize and publicize intimate information about children exposed student athletes to unwarranted public scrutiny on a nationwide scale. By broadcasting demonstrably false claims that more than 60 boys were competing on Jeffco girls' athletic teams, OCR enabled national media outlets and social media commentators to amplify this misinformation. These errors are not peripheral; they form the basis for at least two of the three Action Items in the proposed Resolution Agreement. It is axiomatic that OCR cannot

demand remedies for a violation that does not exist. Further, as an arm of the Executive Branch of the United States government, OCR should correct the false factual record it opted to disseminate on a nationwide, if not global, scale, and at the very least must amend its own inherently flawed Letter of Findings.

Jeffco also has other questions about OCR's factual findings that are relevant to our efforts to reach a resolution agreement, which is yet another reason that good faith negotiations ought to continue, rather than being preemptively cut short.

**Jeffco Is Bound by Colorado Law and Federal Law Does Not Require What OCR Seeks**

Jeffco's facilities use, accommodations, and athletics participation policies are grounded in the Colorado Anti-Discrimination Act ("CADA"). The policies are not intended to and do not defy federal authority. They merely reflect Jeffco's obligation to comply with Colorado law, which also binds every public preschool, elementary, middle, junior high, high school, junior college, two- or four-year college, and university in Colorado.

As we had previously agreed to discuss further, signing the proposed Resolution Agreement in its current form would put Jeffco in the impossible position of violating State law. We specifically sought OCR's input on resolving this concern. Now, OCR asks the District to choose between potential loss of federal funding and complying with clearly established State law *before* providing us with any input on our concern.

It bears note that the definitions OCR asks the District to codify are not found in Title IX, in the Code of Federal Regulations, or in any rule promulgated through the requisite Administrative Procedure Act's notice-and-comment process. They are drawn singularly from non-binding Executive Orders, which are not law. *See Female Athletes United v. Ellison*, 172 F.4th 1019, 1029 (8th Cir. 2026) ("[E]xecutive guidance and agency findings, in and of themselves, do not reflect settled law … whether Title IX requires, permits, or prohibits the participation of transgender athletes in female athletics remains an open question of law."). Confirming this point, the Colorado Supreme Court recently held that Colorado entities must comply with CADA's anti-discrimination protections and cannot abandon those obligations merely because of a sub-regulatory agency pronouncement. *Boe v. Children's Hospital Colorado*, No. 26SA66, 2026 WL 1382147, *11 (Colo. May 18, 2026). Jeffco is bound by this ruling, and we have repeatedly sought to discuss the conflicts between OCR's demands, which far exceed black letter federal law, and Colorado law with OCR. We anticipate addressing some of these very issues during our upcoming June 16 meeting, yet OCR now demands a response before that meeting can even take place.

Likewise, *B.P.J. v. West Virginia State Board of Education* – wherein the Department of Justice as amicus curiae did not argue that Title IX codified or otherwise binds recipients to the definitions of terminology OCR's proposed Resolution Agreement asks Jeffco to adopt – remains pending before the U.S. Supreme Court. Certainly, a decision will be published in that case within the next 15 days.

**The Proposed Resolution Agreement Contains Provisions Inconsistent with Our Values and Our Students' Well-Being**

Jeffco's greatest obligation is to the students and families we serve. Yet, proposed Resolution Agreement Action Item 1 would require the District to issue a public policy statement with definitions and directives that do not appear in Title IX or its implementing regulations and that conflict with Colorado law. Compliance would require Jeffco to rescind policies mandated by state anti-discrimination law—a step we cannot lawfully take.

Action Item 2 is premised wholly on the false finding that boys are competing in girls' athletics. This is a remedy in search of a harm, since our data did not reflect that any girl in Jeffco has lost a competitive athletic opportunity.

And Action Item 3 rests on the fractured foundation laid by Action Items 1 and 2.

**Jeffco Remains Ready to Continue Discussions**

We are committed to upholding the rule of law and are confident that our actions comply with both state and federal requirements. Despite our deep concerns with OCR's process to-date and the current contours of the proposed Resolution Agreement, Jeffco remains ready to work with OCR toward a resolution that serves all students. We have been, and continue to be, prepared to engage in good-faith dialogue.

What we cannot do is execute an agreement on OCR's expedited timeline, when that same agreement is premised on incorrect facts, forces us to violate Colorado law, and would require the District to issue statements inconsistent with the values that guide our work serving all students. We respectfully urge OCR to return to the table—beginning with our already-scheduled June 16 meeting—so that we may continue working together toward a resolution that respects both federal and state law while ensuring equitable educational opportunities for every student in Jefferson County Public Schools.

JEFFCO PUBLIC SCHOOLS

*s/ Jacquelynn N. Rich Fredericks*
Jacquelynn N. Rich Fredericks
Assistant General Counsel

Cc: Tracy Dorland, Superintendent
  Jeffco Board of Education