# EXHIBIT J

**Legal Services**
1829 Denver West Dr. Bldg. 27, Golden, CO 80401
Phone: 303.982.6544



July 6, 2026

Ms. Erica Austin, Acting Regional Director
U. S. Dept. of Education Office for Civil Rights
1560 Broadway, Suite 110
Denver CO 80202

Re: OCR Case Number 08-25-5902, Response to Notice of Impending Enforcement

Dear Ms. Austin:

I write in response to OCR's Notice of Impending Enforcement, dated June 26, 2026 (the "Letter"), which threatens to initiate proceedings to withhold more than $52 million dollars earmarked for Jefferson County Public Schools R-1 ("Jeffco" or the "District") students, unless we agree to violate State of Colorado law by close of day today.

In response to the Letter's invitation that the "District propose any revisions [to the proposed Resolution Agreement] for OCR's consideration," I attach a redline. This letter details the reasoning behind the revisions to the proposed Resolution Agreement, and the irreparable harm to Jeffco kids should OCR follow through on its enforcement threat.

**OCR's Findings are Based on Fiction and Must be Amended.**

Clarification of OCR's Letter of Findings ("Findings") paves the path for continued candid conversation about what is possible in a Resolution Agreement. OCR's Letter adopts the demonstrably false findings from its March 13, Letter of Findings, and demands that Jeffco sign a Resolution Agreement including terms crafted to fix issues that simply do not exist. OCR must provide "findings of fact for each allegation, supported by any necessary explanation." CPM Sect. 303(d); 305. No evidence supports OCR's Findings, and we renew our request that they be corrected in three respects.

OCR found "at least 61 female roster positions are held by students who do not identify as female." Findings, p. 29. That is false. The District has repeatedly clarified that the data we produced shows some boys serve as team managers, mascots, or trainers for girls' teams. The rosters did not show a single boy competing on a girls' team. Yet, the Letter incorporates the falsehood from OCR's Findings claiming that Jeffco "denie[d] girls the same equal opportunity to participate and excel in competitive sports" and "displac[ed] girls from athletic programs designed for and dedicated to female students." At bottom, OCR's proposed Resolution Agreement seeks to compel the District to adopt and perpetuate this fiction in order to preserve its Federal funds.

The only other basis for OCR's conclusion was the unproven allegations in *Wailes v. Jefferson County Public Schools*, 1:24-cv-02439 (D. Colo. 2024). Allegations in litigation are not facts. What is factual is that the U.S. District Court for Colorado dismissed the *Wailes* case in August

2025 – seven months *before* OCR released its Findings.[1] While an appeal is pending on the dismissal, to date it remains the case that no court has made any factual findings substantiating the *Wailes'* claims. And since OCR did not independently investigate the *Wailes'* allegations via interviews or other means, it is *per se* unreasonable for OCR to pursue withholding $52 million in Federal funds from Jeffco students based on the untested allegations in private party litigation that a federal district court dismissed.

Therefore, pursuant to CPM Sect. 303(d) and 305, we respectfully renew our request that OCR amend its Findings to reflect that: (1) Jeffco's rosters did not reflect any male student in a competition spot on any girls' team roster, (2) the *Wailes'* allegations are untested, and (3) Jeffco is neither party to nor bound by the partial settlement in the third-party *Sullivan* case. In addition, we ask that OCR agree to strike from the proposed Resolution Agreement, Action Item 2, which relies on the erroneous conclusion that girls were displaced from athletics opportunities.

**OCR's Proposed Resolution Agreement Must be Amended to Remove the Demand that Jeffco Violate Clearly Established Law.**

OCR cannot require Jeffco to violate State law to conform to the President's Executive Orders and OCR's subregulatry Title IX policy pronouncements. The proposed Resolution Agreement asks Jeffco to adopt and publicize definitions that conflict with Colorado's Antidiscrimination Act ("CADA"). But resolution agreements are intended to set out "specific acts or steps the recipient will take to resolve compliance concerns and/or violations." CPM Sect. 304. There can be no doubt that Jeffco is bound by clear Colorado law, which prohibits discrimination on the basis of gender identity in schools. CO Rev. Stat. § 24-34-601(2)(a).

Title IX allows – but does not require – sex separation in facilities and athletics. Last week the U.S. Supreme Court held that a state *may* choose to limit girls' sports participation based on birth sex, but it did not hold that Title IX *requires* separation on that basis. *West Virginia v. B.P.J.*, 604 U.S. ___, No. 24-43, slip op. at 1 n 1, 10 (June 30, 2026).

OCR's Findings and the proposed Resolution Agreement rely on President Donald J. Trump's Executive Orders 14168 and 14201, and the Department's February 2025 Title IX Enforcement Directive. None of these documents "reflects settled law," *Female Athletes United v. Ellison,* 172 F.4th 1019, 1029 (8th Cir. 2026), and as such cannot preempt clear provisions of state statutes.

On the other hand, Colorado law is clear. CADA has prohibited discrimination on the basis of gender identity in places of public accommodation, including schools, since 2009. In 2013, the Colorado Civil Rights Commission found that a school district violated CADA when it denied a transgender girl access to the girls' restroom. *See Mathis v. Fountain-Fort Carson*, CCRD Charge No. P20130034X (June 17, 2013). In the 13 years since—including throughout the first Trump Administration—Jeffco has permitted students to access facilities consistent with their gender identity. We must continue to do so, as the Colorado Supreme Court recently confirmed that Colorado entities must comply with CADA's anti-discrimination protections and cannot

---

[1] OCR also pointed to a partial settlement agreement in *School District 49 v. Sullivan*, 25-CV-1463 (D. Colo.), which was reached five months *after* Jeffco's response to OCR's data request. Again, Jeffco is not a party to *Sullivan*. Agency action premised on a settlement agreement that a Federal funding recipient is not bound by, a party to, and has not been provided a copy of by OCR is unreasonable.

abandon those obligations merely because of a subregulatory agency pronouncement. *Boe v. Children's Hospital Colorado*, 589 P.3d 478, 491 (Colo. 2026). *Boe* makes clear that Colorado law continues to protect gender identity regardless of a new non-binding interpretation of Title IX.

Jeffco cannot be compelled to violate binding state law based on executive orders and subregulatory guidance that have not been subject to public notice and comment. Accordingly, we ask that OCR agree to strike from the proposed Resolution Agreement, Action Item 1, terms A (ii, iii, iv, and vi) in their entirety, and to amend terms A and A (v) as reflected in the attached redline.

Because our data do not reflect any boys competing on girls' athletic teams, there is simply no need for Action Item 2. Aside from the absence of a violation warranting remediation via this term, practical and legal realities limit Jeffco's ability to comply with the term. Specifically, Action Item 2 requires Jeffco to review all girls' athletics recognitions throughout District history to find out if any boys were recognized, to retroactively give the award to a girl who might otherwise have received it, and apologize to each such girl. To do so, Jeffco would have to know the birth sex of every student athlete who has ever enrolled at Jeffco, *and the birth sex of every student athlete from any other teams who competed against Jeffco*. Meanwhile, because Colorado law permits parents to obtain amended birth certificates for their children, and amended certificates cannot "indicate … that the gender designation or name … has been changed," C.R.S. § 25-2-113.8(2)(b), (3), and (8-9), and since families may enroll their children in school with documents ranging from the family Bible to a birth certificate, it would be highly unlikely that Jeffco could know with any degree of certainty what the birth sex was for each of its own student athletes—let alone that of the tens of thousands of competitors from other schools. Accordingly, we ask that OCR agree to strike from the proposed Resolution Agreement, Action Item 2, in its entirety.

The District can agree to Action Item 1, terms A (vii and viii), and to Action Item 3, as amended.

**Jeffco Students will Suffer if OCR Fulfills its Threat.**

OCR's Letter threatens enforcement action, placing approximately $52 million in Federal funds allocated for Jeffco's 74,000 students at risk. Setting aside the factual infirmities in the Findings and the legal barriers to the proposed Resolution Agreement, both discussed herein, it bears mention that the Federal funds at issue are appropriated under the Elementary and Secondary Education Act, 20 U.S.C. § 6301 *et seq.*, and the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* Withholding that money will not shift the CADA's established legal framework, upon which our policies and practices are based. But it will have a devastating impact on some of our most vulnerable students.

Jeffco cares for each of our students, and we remain steadfast in our commitment to every student's right to learn in an environment free from discrimination and harassment. We also remain hopeful that we can find common ground with OCR in line with the U.S. Supreme Court's reminder that "No student-athlete on either side of the issue, whether a biological female or transgender, deserves to be ostracized or vilified." *West Virginia v. B.P.J.*, 604 U.S. ___, No. 24-43, slip op. at 29 (June 30, 2026). We look forward to receipt of your counter redlines to the

proposed Resolution Agreement, respecting both Federal and state law while ensuring equitable educational opportunities for every student in Jeffco Public Schools. Finally, insofar as it may be helpful to both parties, we would respectfully request to discuss our proposed redlines with Messr. Randolph Wills, OCR's Deputy Assistant Secretary for Enforcement, whose national oversight of OCR's enforcement efforts may inform a consistent and workable resolution.

JEFFCO PUBLIC SCHOOLS

*s/ Jacquelynn N. Rich Fredericks*
Jacquelynn N. Rich Fredericks
Assistant General Counsel

Cc: Robert Stein, Interim Superintendent
    Jeffco Board of Education


Encl. proposed Resolution Agreement redline

**RESOLUTION AGREEMENT**
**Jefferson County ~~Public~~ School**
**District R-1~~s~~ OCR Case Number 08-25-5902**

Jefferson County ~~Public~~ School Districts R-1 ("District") ~~has voluntarily~~ entered into this Resolution Agreement (the "Agreement") with the U.S. Department of Education's Office for Civil Rights ("OCR") to resolve the findings of noncompliance with Title IX of the Education Amendments -
of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX") in the above-referenced investigation. The District assures OCR that it will take the following actions.

**Action Item 1**

(A)     The District will issue a public statement to the District community stating that the District will comply with Title IX, in any education program or activity ~~including but not limited to its athletics programs, notwithstanding any provisions of conflicting state laws~~, in accordance with 34 C.F.R. §§ 100.6(b)-(c), 106.6, 106.33, 106.41, 75.500, and 75.700. [1]

The statement shall:

(i)      Specify that ~~Title IX compliance means the~~The -District will not – on the basis of *sex* – exclude ***female***any student~~s~~ from participation in, deny ~~female~~any student~~s~~ the benefits of, or subject ~~female~~any student~~s~~ to discrimination under any education program or activity~~, including but not limited to its athletics programs, the provision and assignment of intimate facilities such as locker rooms and bathrooms, and the assignment of overnight accommodations~~.

(ii)     ~~Specify that Title IX compliance requires that the District not allow *male students* to compete in any athletic program restricted to *females,* ensuring that only female students are eligible to compete as a member of girls' athletics.~~

(iii)    ~~Specify that the District will provide intimate facilities such as locker rooms and bathrooms and assign overnight accommodations strictly on the basis of sex and comparably provided to each sex.~~

(iv)    ~~Specify that Title IX applies irrespective of state law or regulation and irrespective of current or future policies from sporting or scholastic governing bodies, or any individual sporting bodies.~~

~~(v)~~(ii) Specify that the District will not defer in its interpretation or application of Title IX to the policies of any third-party external organization ~~and may not contract with or arrange with any third-party entity to provide benefits of the District's education programs or activities, including its athletics programs, if that third-party entity discriminates on the basis of sex – including by not operating athletic activities in the manner described in the statement~~.

---

[1] ~~Herein, any athletic opportunity, event, competition, category, program, or activity designated for girls is referred to as "girls' athletics."~~

> **Commented [A1]:** In order to agree to this clause, OCR must amend its Findings - in particular at p. 28-29 - to accurately reflect Jeffco's data set, which did not show any boys competing in girls' athletics. Specifically, as set forth in Jeffco's letter, dated 7/6/26, we ask that OCR amend its Findings letter to reflect that: (1) Jeffco's rosters did not reflect any male student in a competition spot on any girls' team roster, (2) the *Wailes'* allegations are untested, and (3) Jeffco is neither party to nor bound by the partial settlement in the third-party *Sullivan* case.

> **Formatted:** Right: 0.3"

> **Commented [A2]:** This exceeds current Federal law. *See West Virginia v. B.P.J.*, 604 U.S. ___, No. 24-43, slip op. at 1 n.1 (June 30, 2026).

*Page 2 – Resolution Agreement, Jefferson County Public Schools - 08255902*

(vi)    State that the words *sex, female, male, women (which includes girls), men (which includes boys),* as used in the statement and as applicable in all practices, policies, and procedures adopted and implemented by the District or its girls' athletics programs pursuant to or consistent with Title IX, mean the following:

- "Sex" is a person's immutable biological classification as either male or female. "Sex" is not a synonym for and does not include "gender identity."
- "Female" is a person of the sex characterized by a reproductive system with the biological function of producing eggs (ova).
- "Male" is a person of the sex characterized by a reproductive system with the biological function of producing sperm.
- "Woman" is an adult human female.
- "Girl" is a minor human female.
- "Man" is an adult human male.
- "Boy" is a minor human male.

(vii)(iii)    Identify the name or title, office address, electronic mail address, and telephone number of the employee or employees designated as the District's Title IX Coordinator(s).

(viii)(iv)    Specify how to report or file a complaint of sex discrimination and how to report or file a formal complaint of sexual harassment under the District's grievance procedures.

The District will post this statement in a prominent location on its main website, each of its school websites, and on each of its websites for girls' athletics.

(B)    The District will rescind or revise any policies, guidance documents, or previously issued notices, which advised or authorized its girls' athletics programs to permit male athletes to compete in girls' athletics, to reflect that pursuant to Title IX, girls' athletics must ensure that only female athletes are eligible to compete in girls' athletics.

(C)    The District will rescind or revise any policies, guidance documents, or previously issued notices which permitted males to access female bathrooms and locker rooms or males to share overnight accommodations with females to reflect that pursuant to Title IX, only females may access female bathrooms and locker rooms and only females may share overnight accommodations with females.

(D)    The District will review all of its internal and public-facing websites for any statements, links, or documents that are inconsistent with Title IX on the points covered in this Agreement (namely, eligibility to compete in girls' athletics, the provision of intimate facilities for female students, and the assignment of overnight accommodations) and remove or revise any such statements, links, or documents to reflect compliance with the Title IX requirements covered in this Agreement.

(E)    The District will promptly notify all staff, students, and directors and coaches of girls' athletics programs of all rescissions or revisions undertaken pursuant to Action Items 1(B), 1(C), and 1(D).

**Commented [A3]:** This exceeds current Federal law. *See West Virginia v. B.P.J.*, 604 U.S. ___, No. 24-43, slip op. at 1 n.1 (June 30, 2026).

It also violates CADA. *See* Colo. Rev. Stat. § 24-34-301 *et seq.*; 3 CCR 708-1, Rule 81.9.

**Commented [A4]:** This exceeds current Federal law. *See West Virginia v. B.P.J.*, 604 U.S. ___, No. 24-43, slip op. at 1 n.1 (June 30, 2026).

**Commented [A5]:** This exceeds current Federal law. *See West Virginia v. B.P.J.*, 604 U.S. ___, No. 24-43, slip op. at 1 n.1 (June 30, 2026).

It also violates CADA. *See* Colo. Rev. Stat. § 24-34-301 *et seq.*; 3 CCR 708-1, Rule 81.9.

*Page 3 – Resolution Agreement, Jefferson County Public Schools - 08255902*

**Reporting Requirements for Action Item 1**

1. Within 3~~5~~0 calendar days of the date of execution of the Agreement, the District will provide OCR with documentation reflecting ~~(i)~~ that the statement was sent to each of its girls' athletics programs and posted on the District's websites as described in Action Item 1(A) (including a link to the location where the statement is posted)~~; and (ii) each policy, guidance document, and notice if any, and copy thereof described in Action Items 1(B) and 1(C).~~.

2. ~~Within 45 calendar days of the date of execution of the Agreement, the District will submit to OCR evidence of (i) its recission or revision of all prior guidance documents and/or statements described in Action Items 1(B) and 1(C); (ii) revisions to its websites in compliance with Action Item 1(D); and (iii) information or documentation showing how such recissions or revisions were communicated to all staff, students, directors, and coaches of girls' athletics in compliance with Action Item 1(E).~~

**~~Action Item 2~~**

~~(A)     The District will:~~

~~(i)     Review all individual athletic records, titles, honors, awards or similar recognition (herein, "Recognitions") received by male athletes competing in girl's athletics at any time up to and including the reporting date indicated below; and review all team Recognitions for competitions in which any male athlete competed in girl's athletics.~~

~~(ii)     Restore to individual female athletes all individual Recognitions such female athletes earned and would have been given but for the Recognitions being given to male athletes who competed in girls' athletics, regardless of whether the female athlete remains currently, or is no longer, a student enrolled in the District.~~

~~(iii)     Submit to OCR a list of all the reviews and restoration/correction actions described in Action Item 2(A)(i)-(ii) to the District. As to each female athlete to whom an individual Recognition is restored, the District will send a letter to the female athlete expressing apology on behalf of the District for allowing her educational experience and participation in athletics to be marred by sex discrimination.~~

**~~Reporting Requirements for Action Item 2~~**

~~1.     Within 30 calendar days of the date of execution of the Agreement, the District will submit to OCR a list of all reviews conducted (including the underlying findings regarding male athletes competing in girls' athletics) and restorations/corrections to Recognitions pursuant to Action Item 2(A).~~

> **Commented [A6]:** The District's data set did not show any boys competing on girls' athletics teams. Thus, Action Item 2 is unnecessary. In addition, the District shared that due to Colorado law permitting issuance of amended birth certifications, coupled with the fact that families may enroll their children in school with a variety of documentation ranging from the family Bible to a birth certificate, the District is highly unlikely to be able to ascertain the sex assigned at birth to each student athlete.

*Page 4 – Resolution Agreement, Jefferson County Public Schools - 08255902*

**Action Item 2~~3~~**

(A)    The District will provide its annual Title IX training ~~on the Revised Policies identified in Action Item 1~~ to all administrators and staff responsible for reporting Title IX complaints and/or conducting Title IX investigations.

**Reporting Requirements for Action Item 2~~3~~**

1. Within 6~~0~~3 calendar days of the first student-serving day of the 2026-27 school year, ~~date of execution of the Agreement~~, the District will provide OCR with documentation that it has provided the training required by Action Item 2~~3~~, including:
   a. The date ~~and time of~~ the training went live;
   b. A copy of any materials that the District used at the training;
   ~~c. A list of the attendees' names and titles;~~
   ~~d. A list of the names and titles of employees who should have attended the training but did not attend training or left before the training was complete;~~
   ~~e. A sign-in sheet, or if the training is conducted virtually, verification sufficient to show all attendees;~~
   ~~f.~~c. The name, title, and credentials of the individual who conducted the training; and
   d. Data reflecting relevant staff completion rate of the training;
   ~~g.~~e. Plans to provide training for non-completers. ~~The date training will be provided to anyone who did not attend or complete the training.~~

**Other Provisions**

The District understands that by signing the Agreement, it agrees to provide data and other information in a timely manner in accordance with the reporting requirements of the Agreement. The District also agrees to send all responsive data to OCR in an electronic format instead of requiring OCR to travel to the District or any other location to view said information.

Further, the District understands that during the monitoring of the Agreement, if necessary, OCR may visit the District, interview staff, and request such additional reports or data as are necessary for OCR to determine whether the District has fulfilled the terms and obligations of the Agreement. ~~Upon OCR's acknowledgment of the District's satisfaction of the commitments made under the Agreement~~Within 14 calendar days of OCR's receipt of the District's reporting for both Action Items, OCR will close the case.

The District understands and acknowledges that OCR may initiate proceedings to enforce the specific terms and obligations of the Agreement and/or the applicable statute(s) and regulation(s).  Before initiating such proceedings, OCR will give the District written notice of the alleged breach and sixty-three calendar days to cure the alleged breach.

The Agreement will become effective immediately upon the signature of the District's authorized official below.

By:    _____    Date:   _____
~~Ms. Tracy Dorland~~Dr. Robert Stein, Interim Superintendent
Jefferson County ~~Public~~ School~~s~~ District R-1